Erlind LATIFI, Petitioner,

v.

Alberto GONZALES, United States Attorney General, Respondent.

Docket No. 04–1167–AG.

United States Court of Appeals, Second Circuit.

Argued: Nov. 8, 2005.

Decided: Nov. 17, 2005.

Aleksander Milch, for Charles Christophe, Christophe & Associates, P.C., New York, N.Y., for Petitioner.

Walter M. Norkin, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, of counsel), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, New York, N.Y., for Respondent.

Before: FEINBERG, CALABRESI, and B.D. PARKER, Circuit Judges.

## PER CURIAM.

Petitioner Erlind Latifi, a native and citizen of Albania, petitions for review of the denial, by the Board of Immigration Appeals ("BIA" or "Board"), of his application for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231, and for withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 1465 U.N.T.S. 85, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984). The Immigration Judge ("IJ") denied Latifi's application substantially on the basis of an adverse credibility finding. The IJ also found that country conditions reports did not sufficiently substantiate Latifi's claim that he had a well-founded fear of persecution in Albania. Pursuant to 8 C.F.R. § 1003.1(e)(4), the BIA subsequently affirmed, without opinion, the results of the IJ's decision.

Latifi entered the United States through John F. Kennedy International Airport on February 2, 2001. At an airport interview with an asylum officer, he said that had come to the United States for economic reasons, because he "didn't have a job" and "didn't have money to live" in Albania. Five days later, at a "credible fear" interview, Latifi said that he came to America fleeing threats allegedly made to him by individuals connected to the Socialist Party in southern Albania. He claimed in his March 1, 2001, I–589 application, and in his testimony at his October 21, 2002, removal hearing, that he has been singled out for retribution because, as a police cadet, he participated in efforts to suppress civil unrest in southern Albania in the spring of 1997.

The IJ based his adverse credibility finding on purported discrepancies between the accounts Latifi gave at the airport interview, the credible fear interview, and in his hearing testimony. The IJ said that Latifi gave no reason for why he was not forthcoming in his airport interview, and the IJ stated that he was not convinced of why the armed bandits against whom Latifi's police academy unit fought in 1997 would single him out for retribution. The IJ noted further that, even if armed bandits had targeted Latifi, there was no evidence that they would have done so on the basis of Latifi's membership in the Democratic Party.

■ When the BIA summarily affirms an IJ's decision, we review the decision of the IJ directly. Shi Liang Lin v. U.S. Dep't of Justice, 416 F.3d 184, 189 (2d Cir.2005). We defer to an IJ's factual finding "if it is supported by reasonable, substantial and probative evidence in the record when considered as a whole." Wu Biao Chen v. INS, 344 F.3d 272, 275 (2d Cir.2003) (per curiam) (internal quotation marks omitted). We have cautioned, however, that "the fact that an IJ considers a petitioner not to be credible constitutes the beginning not the end of our inquiry." Secaida–Rosales v. INS, 331 F.3d 297, 307 (2d Cir.2003) (quoting Aguilera–Cota v. INS, 914 F.2d 1375, 1381 (9th Cir.1990)). When an IJ rejects an asylum applicant's testimony, "the IJ must provide specific, cogent reasons for doing so." Id. (internal quotation marks omitted). Our review "is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." Zhou Yun Zhang v. INS, 386 F.3d 66, 74 (2d Cir.2004).

■ We find error in each of the bases given for the IJ's rejection of Latifi's application. The IJ stated that, between Latifi's airport interview, his credible fear in-

terview, and his hearing testimony, "[i]t appears that the respondent's essentially telling three different stories." In Latifi's credible fear interview, however, he said that he had attended many Democratic Party demonstrations, until his father received threats, and that he fears returning to Albania because of his Democratic Party membership. The IJ did not identify any specific inconsistencies between this story and Latifi's testimony at his hearing. And on our review of the record, we find any potential discrepancies that might exist to be far from "significant and numerous," but rather insignificant and trivial. *See Secaida–Rosales*, 331 F.3d at 308.

While it is true, moreover, that Latifi's airport interview was inconsistent with his later testimony, Latifi explained that he was afraid and pressured, and did not know whether any harm would come to him if he mentioned his political situation. We have stated that an airport interview "may be perceived by the alien as coercive or threatening," and that "because those most in need of asylum may be the most wary of governmental authorities, the BIA and reviewing court must recognize, in evaluating the statements made in an interview, that an alien may not be entirely forthcoming in the initial interview." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir.2004) (internal citation omitted). Latifi's explanation for his omissions, which he offered before *Ramsameachire* was decided, falls squarely within the category of reasons which, as we stated in *Ramsameachire*, require that airport interviews be viewed with caution. Rather than evaluate this explanation, however, the IJ said that "there appears to be no reason why [Latifi] would not tell the INS" of his persecution in Albania.

The IJ similarly failed to engage or evaluate Latifi's explanation of why the armed bandits against whom he fought would have singled him out. Latifi stated in both his I–589 and in his hearing testimony that he was singled out because he was one of only three police academy cadets who hailed from southern Albania, where the armed bandits were prevalent and where the Socialist Party was particularly strong. The IJ instead focused on Latifi's testimony that his unit "did a good job" against the bandits, and attempted to impeach this statement by noting that Latifi's unit did not succeed in restoring order. The IJ thus erred in failing to base his credibility determination on the "whole record." *See Secaida–Rosales*, 331 F.3d at 308.

Finally, the IJ understated the evidence in the record that armed bandits from the south might have targeted Latifi for membership in the Democratic Party. The IJ said that there was no proof of any association between the Socialist Party and the armed bandits in southern Albania, when the record in fact contained evidence that the civil unrest in the spring of 1997 was led by a coalition of Socialist Party-led former Communists and armed criminals. *See Political Handbook of the World: 1999*, at 12 (Arthur S. Banks & Thomas C. Muller eds., 1999). Although it is the task of the agency to determine the appropriate weight to give such evidence, *see Zhou Yun Zhang*, 386 F.3d at 77, we may remand "where the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts." *Tian–Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir.2004).

■ All of the above grounds for the IJ's rejection of Latifi's application being erroneous, we cannot say that the IJ would have reached the same result based on other facts in the record. Accordingly, the proper course is to remand to the BIA for reevaluation of Latifi's claims for asylum and withholding of removal in light of this

opinion.[1]  *See SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

The petition for review is therefore GRANTED, the final order of removal is VACATED, and the case is REMANDED to the Board for further proceedings consistent with this opinion.

---

1. We also remand for reconsideration of the IJ's rejection of Latifi's application for CAT relief. The IJ held that the standard under the CAT is "whether it's more likely than not that the government of Albania would torture the respondent." This overstates the Torture Convention's "state action" requirement. "In terms of state action, torture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir.2004). On remand, the BIA and, if appropriate, the IJ should reconsider Latifi's CAT claim in light of this standard.

Finally, we take judicial notice of the fact that the Democratic Party returned to power in Albania through general elections in July. On remand, the BIA may wish to consider this event. Assuming that Latifi, on remand, shows past persecution, the burden of showing the significance, if any, of the change in power is, of course, on the government. *Tian–Yong Chen*, 359 F.3d at 126–27.