Fatmir **QYTEZA**, Neriana Qyteza, and Daniela Qyteza, Petitioners,

v.

Alberto R. **GONZALES**, Attorney General of the United States,* Respondents.

Docket Nos. 04–0029–AG(L), 04–0030–AG(CON), 04–0031–AG(CON).

United States Court of Appeals, Second Circuit.

Argued: Jan. 30, 2006.

Decided: Feb. 2, 2006.

---

\* Attorney General Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as respondent. *See* Fed. R. App. P. 43(c)(2).

Alexander Milch (Michael Lehach, on the brief), Christophe & Associates, P.C., New York, NY, for Petitioners.

P. Michael Cunningham, Assistant United States Attorney (Allen F. Loucks, United States Attorney for the District of Maryland, on the brief), United States Attorney's Office for the District of Maryland, Baltimore, MD, for Respondents.

Before: WINTER, CABRANES, and B.D. PARKER, Circuit Judges.

PER CURIAM.

Petitioners Fatmir Qyteza ("Qyteza"), along with his wife and daughter, Neriana and Daniela Qyteza, all natives and citizens of Albania, seek review of a December 11, 2003 order of the Board of Immigration Appeals ("BIA") affirming a June 19, 2002 decision of an immigration judge ("IJ") that denied petitioners' joint application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). In his application and testimony before the IJ, Qyteza alleged that his entire family had been imprisoned in internment camps until the 1991 collapse of the Communist regime in Albania, and that Qyteza and his family feared future persecution on account of his

post–1991 activities with the Democratic Party, for which he worked as a driver and an elections observer. In particular, Qyteza alleged that he had been attacked, and he and his family threatened, by two masked men in March 2001, five months after Qyteza signed a statement promising to testify in court that he had observed voter intimidation and the destruction of Democratic Party ballots at a polling station manned by Qyteza during the October 2000 local elections.

The IJ denied petitioners' claim for asylum on the grounds that Qyteza had failed to establish either past persecution or a well-founded fear of future persecution, concluding that the IJ had "doubts regarding [Qyteza's] credibility on all matters," that "substantial changes" to conditions in Albania had occurred since 1991, and that "there is little likelihood that [Qyteza] would be persecuted in the future." Decision of the Immigration Judge, June 19, 2002 ("IJ Decision"), at 14. The IJ also denied petitioners' claims for withholding of removal and for CAT relief. On appeal, the BIA summarily affirmed the IJ's decision.

■ "Where, as here, the BIA has affirmed the IJ's decision without an opinion, we review the IJ's decision directly under a standard of 'substantial evidence.'" *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 150 (2d Cir. 2006). Congress has specified that an IJ's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, we engage in an "'exceedingly narrow'" review, *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999) (quoting *Carranza–Hernandez v. INS*, 12 F.3d 4, 7 (2d Cir.1993)), that involves "look[ing] to see if the IJ has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding." *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir.2004) (quoting *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003)). Our "review is designed to ensure merely that 'credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice.'" *Xiao Ji Chen*, 434 F.3d at 157 (quoting *Zhou Yun Zhang*, 386 F.3d at 74).

■ Although our review of an IJ's denial of asylum and withholding of removal on credibility grounds is "highly deferential," *Zhou Yi Ni v. U.S. Dep't of Justice*, 424 F.3d 172, 174 (2d Cir.2005); *Xu Duan Dong v. Ashcroft*, 406 F.3d 110, 111 (2d Cir.2005); *Jin Hui Gao v. U.S. Att'y Gen.*, 400 F.3d 963, 964 (2d Cir.2005), "an IJ's credibility determination will not satisfy the substantial evidence standard when it is based entirely on flawed reasoning, bald speculation, or conjecture." *Xiao Ji Chen*, 434 F.3d at 158 (citing *Secaida–Rosales*, 331 F.3d at 307, 312). When an IJ's decision contains errors, however, we may nevertheless deem remand futile and deny the petition for review if "(1) substantial evidence in the record relied on by the IJ, considered in the aggregate, supports the IJ's finding that petitioner lacked credibility, and (2) disregarding those aspects of the IJ's reasoning that are tainted by error, we can state with confidence that the IJ would adhere to his decision were the petition remanded." *Id.* at 161; *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395 (2d Cir.2005) (stating that a reviewing court may "affirm, despite IJ errors, when we can confidently predict that the IJ would necessarily reach the same result absent errors").

In this case, the IJ supported her determination that Qyteza's testimony regarding his post–1991 affiliation with the Democratic Party was "lacking in credibility

and plausibility" with the following evidence in the record: (1) Qyteza's failure to offer any documentary evidence to corroborate his position as an elections observer for the Democratic Party or his claim that he was to be a witness in a lawsuit brought by the Democratic Party against the Socialist Party; (2) the inconsistency between Qyteza's written asylum application and his testimony before the IJ regarding the timing of the March 2001 attack, and Qyteza's failure to amend his asylum application despite being aware of this discrepancy; (3) the inconsistencies between Qyteza's written asylum application and his testimony before the IJ regarding the details of the March 2001 attack, specifically whether Qyteza bit the hand of one of his masked attackers after they threatened to cut off Qyteza's tongue if he testified on behalf of the Democratic Party; (4) Qyteza's failure to offer sufficient detail regarding the voter intimidation and ballot destruction that he allegedly witnessed during the October 2001 local elections; and (5) the fact that Qyteza was "quite evasive and not forthcoming" when asked about the circumstances under which he obtained a passport only days before leaving Albania. *See* IJ Decision at 10–14. The IJ also noted Qyteza's testimony that the Democratic Party's lawsuit over the October 2001 elections had already been brought and lost, thus eliminating Qyteza's status as a potential witness against the Socialist Party and undermining Qyteza's claim of future persecution due to his role in the lawsuit. *See id.* at 14. Based on these factors, the IJ concluded that Qyteza's testimony was not credible and that he had failed to demonstrate a well-founded fear of persecution.

■ Considering the record in its entirety, we conclude that the IJ erred in one significant respect that requires further

analysis here. Specifically, as part of her adverse credibility determination, the IJ concluded that Qyteza's testimony regarding the vote manipulation that he witnessed during the October 2001 local elections was "lacking in detail" and that he had offered "no detail" regarding the manner in which the police were pressuring voters outside the polling station. IJ Decision at 12. Qyteza's testimony before the IJ, and indeed the IJ's summary of that testimony in her decision, however, demonstrates that Qyteza did in fact offer sufficiently detailed testimony regarding the voter intimidation that he observed as a representative of the Democratic Party. Specifically, Qyteza testified as follows:

> During these elections … just early in the hours of the day that is at 7 a.m., great police forces and plainclothes officers were present in all these polling centers. So during the voting hours, they were pressuring the people, asking them to vote for the Socialist Party. They said that the Democratic Party does not want the best for Albania. When the voting [was] closed … they came in into the [polling] Center. They took the box that was for the Democratic Party and destroyed all the ballots that were for the Democratic representatives.

IJ Hr'g Tr. at 38. On cross-examination, Qyteza specified that "big forces of police and secret officers" outside his polling center "were making all this propaganda to the people and trying to frighten them," saying "don't vote for the Democratic Party." *Id.* at 43. Qyteza further alleged that such actions were "against the election law" in Albania, which, according to Qyteza, prohibited active campaigning "in favor of a certain party" within "two [or] three days" of the election. *Id.* at 43–44.

Having reviewed Qyteza's testimony before the IJ, we conclude that the IJ's

5

determination that Qyteza offered "no detail" regarding the pressuring of voters outside his polling station either mischaracterized or overlooked significant aspects of Qyteza's testimony. As a result, the IJ erred in relying on such grounds in finding Qyteza's testimony not to be credible.[1] *See Zhou Yun Zhang*, 386 F.3d at 74 (noting that our limited review on appeal "is meant to ensure that credibility 'findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice").

■ Notwithstanding our recognition of error in the IJ's decision, we conclude that the IJ's denial of petitioners' asylum application was supported by substantial evidence and, despite error, "we can state with confidence that the IJ would adhere to [her] decision were the petition remanded." *Xiao Ji Chen*, 434 F.3d at 161. The IJ, for example, appropriately relied on Qyteza's failure to testify, during his direct examination and when subject to relatively more focused questioning by the IJ, with respect to a vivid detail involving a material aspect of his claim, as recounted in his written asylum application—namely, that Qyteza defended himself during the March 2001 attack by biting the hand of one of his masked attackers after he "tried to open [Qyteza's] mouth and grab [his] tongue." J.A. at 209. Likewise, Qyteza's contradictory and evasive testimony before the IJ regarding the circumstances under which he obtained an Albanian passport only days before leaving for the United States undermined the credibility of Qyteza's assertions regarding the intensity of his fear during that critical time period. Finally, the IJ correctly noted that because the Democratic Party lawsuit in which Qyteza

was to testify has already been brought and lost, he is no longer a potential witness against the Socialist Party, thus undermining the credibility of Qyteza's claim that he and his family will actually be persecuted in the future due to his limited involvement in the lawsuit over five years ago.[2]

We have emphasized before that where, as here, "the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements by the asylum applicant about matters material to his claim of persecution, or on contradictory evidence or inherently improbable testimony regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Zhou Yun Zhang*, 386 F.3d at 74 (internal quotation marks omitted). Accordingly, because the IJ's decision here was supported by substantial evidence and we are able to " 'confidently predict' " that the IJ would render the same decision in the absence of error, we conclude that remand would be futile in this case. *See Xiao Ji Chen*, 434 F.3d at 161–62 (quoting *Cao He Lin*, 428 F.3d at 395); *see also Cao He Lin*, 428 F.3d at 401 ("[W]e are not required to remand where there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion.").

\* \* \* \*

We have carefully considered all of petitioners' remaining arguments and find each of them to be without merit. Accordingly, for the reasons stated above, the petitions for review are **DENIED**.

---

**1.** We note, however, that the IJ did not err in basing her adverse credibility determination in part on Qyteza's failure to provide corroborative evidence in support of his claim. *See Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000) (stating that while "it is inappropriate to base a credibility determination *solely* on the failure to produce corroborative evidence[,] [t]he presence or absence of corroboration may

properly be considered in determining credibility") (emphasis added).

**2.** We note—although we do not base our decision here on this fact—that Qyteza's claim that he faces a well-founded fear of future persecution at the hands of the Socialist Party is further undermined by "the fact that the Democratic Party returned to power in Albania through general elections in July [2005]."

*See Latifi v. Gonzales,* 430 F.3d 103, 106 n. 1 (2d Cir.2005).

