**Ellia THEN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Alberto R. Gonzales, Attorney General, Respondent.**

**No. 05–6640–ag.**

United States Court of Appeals, Second Circuit.

Aug. 24, 2006.

---

1. *See* The World Factbook, Montenegro, *at* https://www.cia.gov/ cia/publications/ factbook/geos/mj. html (last updated Jul. 20, 2006).

David X. Feng, New York, NY, for Petitioner.

Randy G. Massey, United States Attorney for the Southern District of Illinois, George A. Norwood, Benton, IL, for Respondent.

PRESENT: GUIDO CALABRESI, SONIA SOTOMAYOR and RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Ellia Then, a native and citizen of Indonesia, seeks review of a December 2, 2005 order of the Board of Immigration Appeals ("BIA") affirming the August 2, 2004 decision of Immigration Judge ("IJ") Roxanne C. Hladylowcyz denying petitioners' applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Ellia Then,* No A96 266 633 (B.I.A. Dec. 2, 2005) *aff'g* No. A96 266 633 (Immig.Ct.N.Y.City, Aug. 2, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA issues an opinion that fully adopts the IJ's decision, this Court

reviews the IJ's decision. *See, e.g., Chun Gao v. Gonzales,* 424 F.3d 122, 124 (2d Cir.2005); *Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003). This Court reviews questions of law and the application of law to fact *de novo. See Secaida–Rosales,* 331 F.3d at 307.

█ The IJ denied Then's asylum claim because she found that Then did not file her application within one year of entry into the United States, and she did not demonstrate changed conditions or extraordinary circumstances warranting an exception to the filing deadline. Title 8, Section (a)(3) of the United States Code provides that no court shall have jurisdiction to review the agency's finding that an asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B), or its finding of neither changed nor extraordinary circumstances excusing the untimeliness under 8 U.S.C. § 1158(a)(2)(D). While the courts retain jurisdiction, under 8 U.S.C. § 1252(a)(2)(D), to review constitutional claims and "questions of law," Then has challenged only purely factual determinations and the agency's exercise of discretion. The Court therefore lacks jurisdiction to review the agency's denial of asylum. *See Joaquin–Porras v. Gonzales,* 435 F.3d 172, 178–80 (2d Cir.2006).

█ With respect to Then's withholding of removal claim, Then testified that, as a Buddhist and ethnic Chinese, she feared persecution in Indonesia at the hands of "native Indonesians and of Muslims." Then claimed that she experienced persecution while living in Indonesia, based on the following incidents: 1) when she was in third grade, she had an ethnic Indonesian teacher "who always ... called the Chinese damn Chinese"; 2) one day during rioting in 1998, while working in a shop, she witnessed ethnic Indonesians destroying and burning homes and shops owned by ethnic Chinese, and when she was finally able to leave the shop after the police dispersed the rioters, "a group of young native Indonesians" shouted at her and others, "rape the Chinese," causing Then and the others to flee in a car; 3) in 1999, when she went to live with her parents, "an ethnic war" took place between a Muslim and a Catholic group—both comprised of ethnic Indonesians—during which Chinese shops and houses were looted and destroyed and Then was traumatized and hid in the house; and 4) in 1999, before Then was married to her husband, he was beaten by ethnic Indonesians because the kite he was flying became entangled with the kite of an ethnic Indonesian.

Although the IJ found Then credible, the IJ determined that Then did not demonstrate past persecution or that she "will be subject to future persecution if forced to return to" Indonesia. In reaching this determination, the IJ noted "that the only problem [Then] had surrounded the 1998 riots," and that "she suffered absolutely no harm" during this incident. The IJ also considered the kite-flying incident involving Then's husband, but found that it did not rise to the level of persecution contemplated under the Immigration and Nationality Act ("INA"). Further, the IJ found that Then's claim that she feared being persecuted if forced to return to Indonesia was undercut by a failure to show that there had been any incidents of harassment and prejudice against ethnic Chinese since she left, and by the fact that her parents and her three younger siblings have lived without incident in Indonesia since her departure.

In finding that Then did not establish past persecution, the IJ failed, however, to consider all of the incidents that Then claimed amounted to persecution. Then testified that ethnic Chinese were the target of the rioting that took place in 1999, and that she became traumatized, and she

and her family were afraid to leave their house during that time. The IJ dismissed this incident without explaining why he found that Then had to show "direct contact with Indonesian Muslims who caused her fear" in order for the incident to be considered a persecutorial act. Not only did Then claim, contrary to the IJ's finding, that she was personally affected by the vandalizing that took place during this incident, but it is not clear what the IJ intended by her statement that Then had to have "direct contact" with those who caused her fear, given that a persecutor can certainly engage in persecution from a distance and without physical contact with the person persecuted. Further, although the IJ mentioned in the background section of her decision the verbal abuse Then suffered in third grade, she failed to consider that abuse in her analysis of Then's claim of past persecution. *See Poradisova v. Gonzales,* 420 F.3d 70, 80 (2d Cir.2005) (holding that the cumulative effect of an applicant's experience must be taken into account in determining if the applicant has suffered persecution or has a well-founded fear of persecution).

Further, the IJ's finding that incidents of harassment and prejudice against Chinese have stopped since Then left Indonesia, is contradicted by various news articles and reports in the record. Moreover, the IJ did not explain why she found that Then's family has lived without incident in Indonesia since Then left, given that Then testified that her parents hide in fear in their house "whenever there's something happening," and she did not testify about whether her siblings experienced any persecution since her departure.

Because we cannot be confident that the decision maker would reach the same determination in this case in the absence of the identified errors, we remand. *See*

*Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 161 (2d Cir.2006); *Qyteza v. Gonzales,* 437 F.3d 224, 227–28 (2d Cir. 2006). At the same time, because Then did not raise her CAT claim here, that claim shall be deemed waived. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1, 546 n. 7 (2d Cir.2005).

For the foregoing reasons, we GRANT this petition in part, VACATE the BIA's decision in part, and REMAND to the BIA for further proceedings consistent with this decision. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).