**Ilir HOXHALLARI, Petitioner,**

v.

**Alberto GONZALES, Attorney General,\* Respondent.**

**Docket No. 04–2922–AG.**

United States Court of Appeals, Second Circuit.

Argued: April 20, 2006.

Decided: Oct. 31, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for his predecessor, Attorney General John Ashcroft, as respondent in this case.

Aleksander Milch, Christophe & Associates, P.C., New York, New York, for Petitioner.

Maritza Gonzalez De Miranda, Assistant United States Attorney for the District of Puerto Rico (David N. Kelley, United States Attorney for the Southern District of New York, on the brief), San Juan, Puerto Rico, for Respondent.

Before: JACOBS, Chief Judge, WALKER and WALLACE, Circuit Judges.**

PER CURIAM.

Petitioner Ilir Hoxhallari, a native and citizen of Albania, challenges the May 6, 2004 final decision and order of the Board of Immigration Appeals ("BIA") that sum-

---

** The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

marily affirmed the December 3, 2002 oral decision of immigration judge ("IJ") Sandy K. Hom that [i] denied his application for asylum, withholding of removal under the Immigration and Naturalization Act ("INA"), and protection under the Convention Against Torture ("CAT"), and [ii] directed his removal to Albania. *In re Ilir Hoxhallari*, No. A 79 038 673 (BIA May 6, 2004), *aff'g* No. A 79 038 673 (Immig. Ct. New York, N.Y. Dec. 3, 2002). Hoxhallari claims past persecution and a well-founded fear of future persecution based on his political affiliation with, and support of, the Albanian Democratic Party since 1991.

For the reasons to follow, we deny the petition, and hold that where (as here) country conditions are sufficiently evident and concern a country that is the subject of an appreciable proportion of asylum claims, an immigration judge need not recite robotic findings when relying on changed country conditions under the INA.

## BACKGROUND

Hoxhallari, who has conceded his removability, entered the United States from Mexico without inspection in July 2001, and was promptly placed into removal proceedings. In February 2002, he made a defensive application for asylum, withholding of removal, and relief under CAT, claiming that [i] his family had been interned under the Communist regime; [ii] he was an active supporter of the Albanian Democratic Party after 1991; and [iii] he had been harassed and beaten by the Albanian police on six separate occasions on account of both his own and his family's political activities.

At his December 3, 2002 hearing before the IJ, Hoxhallari testified as follows:

- The Communist regime seized the property of his once well-to-do family,

and interned them for a decade ending in 1988.

- After 1988, his family suffered discrimination on account of the role of his father and uncle as founders of the local Democratic Party.

- In 1991, Hoxhallari's father was arrested, detained, beaten and threatened.

- During the 1997 election, four armed men threatened Hoxhallari and his family, warned them not to vote for the Democratic Party, and fired shots at his house.

- In September 1998, Hoxhallari participated in a rally that was broken up by the police, who hit the demonstrators with rubber sticks, held them in a police station for twenty-four hours, and pummeled Hoxhallari a second time.

- In October 2000 (after Hoxhallari had supported another Democratic candidate), five policemen beat Hoxhallari and his brother with rubber sticks, yelled at their mother, and handcuffed them before leaving. After complaining to the police, he was accused of making wrongful allegations and beaten with rubber sticks.

- Thereafter, Hoxhallari fled to Macedonia, where he arranged his entrance to the United States.

On cross-examination, Hoxhallari conceded that his parents and sister have lived unmolested in Albania since 1991, and that the Democratic Party won three parliamentary seats in the 2000 elections.

In an oral decision, the IJ denied Hoxhallari's application. As to Hoxhallari's claim of persecution pre–1991 under the Communist regime, the IJ found the events too remote to constitute past persecution in view of Albania's fundamental political changes, noting that Hoxhallari

and his family came to no harm between 1992 and 1997, when the Democratic Party was in control. The IJ acknowledged that the conditions in Albania were unstable and that the Socialist party took control in 1997, but rejected as incredible Hoxhallari's claim that he had been arrested in the post–1997 period because of his political activities, particularly since Hoxhallari's father—identified as a founder of a branch of the Democratic Party—"had no difficulty or problems with the Socialist Party since the respondent's alleged departure." The IJ further found that fundamental political changes after 1991 adequately rebutted any presumption of future persecution. Accordingly, the IJ concluded that Hoxhallari failed to meet his burden of proof concerning asylum, withholding of removal, or CAT.

The BIA affirmed without opinion.

## DISCUSSION

### I

█ When the BIA affirms without opinion, we review the IJ's decision as the final agency determination. *See Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). We review the IJ's factual findings under the substantial evidence standard, which is met "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); *see Ramsameachire v. Ashcroft,* 357 F.3d 169, 177–78 (2d Cir.2004); *see also Cao He Lin v. DOJ,* 428 F.3d 391, 401 (2d Cir.2005).

█ We typically afford "particular deference" to an IJ's credibility finding, "mindful that the law must entrust some official with responsibility to hear an applicant's asylum claim, and the IJ has the unique advantage among all officials involved in the process of having heard directly from the applicant." *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.

2004) (internal quotation marks omitted). Our deferential review of a credibility finding is to ensure that it is "based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id.* at 74; *see also Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (explaining that an adverse credibility finding must be based on "specific, cogent reasons" that "bear a legitimate nexus" to the applicant's credibility) (internal quotation marks omitted). "[T]he fact that the BIA has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Ramsameachire,* 357 F.3d at 178.

### II

#### A. Asylum Claim

Hoxhallari's past persecution claim rests on [i] his and his family's experiences under the Communist regime, and [ii] his recent experiences with the Albanian police under the Socialist Party regime. The IJ rejected this claim in perfunctory terms:

There were inconsistencies that were reflected in the oral testimony when compared to the written I–589 provided by the respondent; dates, presence of individuals at certain events, also, the events themselves. When question [sic] about those events the respondent was unable to be consistent with regard to his written application.... The Court, as a result, finds that these events go to the heart of the respondent's claim and since they are inconsistent, the Court finds that the respondent is not credible with regard to those events.

Hoxhallari argues that the IJ erred by failing to identify specific examples of his testimony that differed from his written statement given in support of his I–589 application; and that the IJ's failure to

articulate specific reasons for its finding him not credible constitute reversible error.

■ Our caselaw is clear that where an IJ rejects a petitioner's testimony on adverse credibility grounds, the IJ must provide "specific, cogent reasons for doing so," and "[t]hose reasons must bear a legitimate nexus to the [adverse credibility] finding." *Secaida–Rosales,* 331 F.3d at 307. But we do not reach the question of whether the IJ's adverse credibility finding is supported by substantial evidence (and, if not, whether remand is required), because the material political changes that have taken place within Albania make Hoxhallari ineligible for asylum and withholding of removal.

■ "A showing of past persecution sets up a rebuttable presumption of a well-founded fear of future persecution, which is overcome only if a preponderance of the evidence establishes that a change in circumstances in the applicant's country of nationality has occurred such that the applicant's fear is no longer well-founded." *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 148 (2d Cir.2003) (internal quotation marks omitted). But "even if an alien establishes that he or she has been persecuted in the past, 'asylum may be denied as a matter of [the Attorney General's] discretion if there is little likelihood of present [or future] persecution.'" *Islami v. Gonzales,* 412 F.3d 391, 397 (2d Cir.2005) (quoting *In re Chen,* 20 I. & N. Dec. 16, 18 (BIA 1989)) (brackets in original). There are exceptions, but Hoxhallari's experiences do not rise to the level of "atrocious" past persecution. *See In re Chen,* 20 I. & N. Dec. at 19; *Islami,* 412 F.3d at 394 n. 3. Nor is this a case "where the favorable exercise of discretion is warranted for humanitarian reasons even if there is little likelihood of future persecution." *In re Chen,* 20 I. & N. Dec. at 19. Nor has Hoxhallari demon-

strated that his political affiliation caused him "more than the usual amount of ill-treatment during [the] turbulent period" in Albania. *Id.* at 21.

## B. Withholding of Removal Claim

Hoxhallari's fear of future persecution rests on [i] his claim of past harassment as a member of the Democratic Party; [ii] his contention that "though the old Communist regime is gone, it has been reborn in the shape of the [Socialist Party], which has continued to persecute and harass its political opponents"; and [iii] the State Department country condition reports detailing human rights abuses committed against supporters of the Democratic Party.

■ Withholding of removal under the INA, 8 U.S.C. § 1231(b)(3), is a mandatory form of relief that hinges upon a petitioner demonstrating a well-founded fear of future persecution on a ground protected by the INA, *i.e.,* that it is more likely than not that his "life or freedom would be threatened in [that] country … on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). Under this standard, an applicant must prove that [i] he has a genuine fear of persecution and [ii] a reasonable person in a like position would share that fear. *See Chun Gao v. Gonzales,* 424 F.3d 122, 128 (2d Cir.2005). When the withholding of removal analysis overlaps factually with the asylum analysis (which entails a lesser burden of proof), an alien who fails to establish his entitlement to asylum necessarily fails to establish his entitlement to withholding of removal. *Xin–Chang Zhang v. Slattery,* 55 F.3d 732, 738 (2d Cir.1995).

Assuming *arguendo* that the IJ's credibility assessment of Hoxhallari was defective, the question becomes whether sub-

stantial evidence nevertheless supports the IJ's determination as to Hoxhallari's withholding of removal claim. *See Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir.2006) ("[A]n asylum claim based solely on evidence of a well-founded fear of *future* persecution is not necessarily foreclosed by an IJ's finding that an applicant's anecdotes of *past* persecution are not believable." (emphasis in original)). The IJ's reasoning on Hoxhallari's well-founded fear claim was (again) perfunctory:

> Where the political success of the Democratic Party is demonstrated by the fact that they had won certain parliamentary seats, the respondent's explanation of why he is unable to reside in those areas was not convincing nor persuasive.

The IJ's decision has no meaningful discussion as to why the presumption of future persecution should have been defeated by the change in country conditions. Were this the end of our inquiry, we would be inclined to remand. *See Shi Liang Lin v. DOJ*, 416 F.3d 184, 192 (2d Cir.2005). Other factors militate against remand, however.

 *First,* the burden is on Hoxhallari to proffer evidence of his well-founded fear of future persecution, *see Ramsameachire,* 357 F.3d at 178; and there is no record evidence to support a well-founded fear premised on any ground protected by the INA, *see* 8 U.S.C. § 1101(a)(42). For the

past decade, Hoxhallari's family has lived in Albania unmolested; his father had no recent problems with the police as a result of his Democratic Party affiliation;[3] and every country condition report identifies Albania as a rough-and-tumble democracy. Material changes in country conditions are described in (for example) the State Department Bureau of Democracy, Human Rights and Labor's March 2001 report titled "Albania: Country Reports on Human Rights Practices."[4] Relying upon the general existence of unspecified country condition, the IJ's opinion recognized this political transformation:

> The respondent to a large extent has noted several seminal events with regard to his family that took place during the Communist control of the Albanian government. It is the opinion of the Court based on the background material provided by the respondent that there has been a substantial change in circumstances that has taken place in the respondent's case to make those events remote in terms of the respondent's request for relief.
>
> First and foremost, of course, is the collapse of the Communist government in Albania.
>
> * * * * * *
>
> The Court finds that the events under the Communist govern-

---

**3.** Hoxhallari conceded as much at his hearing:

> Q Now, earlier you indicated that your father was responsible for creating the first branch of the Democratic Party in your village. Is that true?
>
> A Yes.
>
> Q Now, have the police sought to arrest your father or in anyway detain him since your departure from Albania as result of his political activities?
>
> A No, no.

**4.** The 2001 State Department Report makes clear that Albania is headed in a democratic direction:

> Albania is a republic with a multiparty parliament, a Prime Minister, and a President, elected by Parliament. The Prime Minister heads the Government; the presidency is a largely ceremonial position with limited executive power.
>
> * * * * * *
>
> [Albania] is poor, and is in transition from a central economic planning to a free market system.
>
> . . .

ment and during that period of time between the fall of the Communist government and the success of the Democratic Party are too remote given the substantial change in circumstances in respondent's home country.

"[I]n the absence of contradictory evidence," we afford State Department country condition reports "considerable deference." *See In re T–M–B,* 21 I. & N. Dec. 775, 779 (BIA 1997).[5]

*Second,* deference is owed to the specialized knowledge of an IJ acting in his agency capacity. *See Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We assume, for example, that the National Labor Relations Board has a "specialized expertise in [the] field of labor relations," *Nat'l Fed'n of Fed. Employees, Local 1309 v. DOI,* 526 U.S. 86, 99, 119 S.Ct. 1003, 143 L.Ed.2d 171 (1999) (citations omitted); *see also Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951) ("[The NLRB is] one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect."); that the Federal Communications Commission has a special understanding about matters involving communications by radio, television, wire, satellite, and cable, *see FCC v. Nat'l Citizens Comm. for Broad.,* 436 U.S. 775, 814, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978); and that the Interstate Commerce Commission (ICC) (prior to its abolition in 1995) had expertise in railroads and other common carriers, *see Atl. Coast Line R.R. Co. v. Florida,* 295 U.S. 301, 317, 55 S.Ct.

713, 79 L.Ed. 1451 (1935) (stating that "the opinion of a body of experts [of the ICC] upon matters within the range of their special knowledge and experience" are "entitled to great respect"). Factfinders in immigration cases command no lesser deference.

"Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Far E. Conference v. United States,* 342 U.S. 570, 575–76, 72 S.Ct. 492, 96 L.Ed. 576 (1952); *see also Bragdon v. Abbott,* 524 U.S. 624, 642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) ("[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). We therefore assume that an IJ has a certain advantageous and expert working knowledge—this includes the salient historical events and conditions of countries that are the subject of an appreciable proportion of asylum claims.

*Third,* although we have fashioned rules that an IJ must follow when rendering an adverse credibility determination, *see, e.g., Ming Shi Xue v. BIA,* 439 F.3d 111, 122 (2d Cir.2006) (holding that "where the perceived incongruities in an asylum appli-

---

**5.** Of course, we may always exercise independent discretion to take judicial notice of any further changes in a country's politics that occurred between the time of the BIA's determination decision and our review, *see, e.g.,*

*Latifi v. Gonzales,* 430 F.3d 103, 106 n. 1 (2d Cir.2005) (per curiam); the same is true for the BIA, *see Yang v. McElroy,* 277 F.3d 158, 163 (2d Cir.2002).

cant's testimony are not plainly obvious, an IJ cannot rely on them to support an adverse credibility ruling without first identifying the alleged inconsistencies for the applicant and giving the applicant an opportunity to address them"); *Secaida–Rosales*, 331 F.3d at 307, we have established no such requirements applicable to a finding of changed country conditions.

 A credibility finding is specific to each petitioner; and (consequently) that finding must be detailed, specific, and rooted in the evidentiary record. *See Secaida–Rosales*, 331 F.3d at 307. The same is not true for facts relating to the state of affairs and history of a given country. We cannot assume that an IJ comes to each case ignorant of the history, political status, and evolving conditions in countries from which many petitioners seek asylum. We therefore require no "robotic incantation" by an IJ when stating for the record that, for example, Albania is no longer a Communist tyranny run by a psychopath, or that China is a Communist state in which certain conditions prevail. *Cf. United States v. Brown*, 98 F.3d 690, 694 (2d Cir.1996) ("We do not require that district judges by robotic incantations state 'for the record' or otherwise that they are aware of this or that arguable authority to depart but that they have consciously elected not to exercise it.").

 We hold that where (as here) changed conditions evidently prevail in a country that is the subject of an appreciable proportion of asylum claims (and, as a result, we can safely assume that IJs have developed considerable expertise related to that country's current conditions), an immigration judge need not enter specific findings premised on record evidence when making a finding of changed country conditions under the INA.

In this case, the IJ's finding of changed country conditions in Albania was clearly sufficient and decisive. Even if defects in the IJ's credibility finding were to lead in the end to a crediting of Hoxhallari's testimony, that testimony, bearing as it did on events predating the change in country conditions found by the IJ, would naturally have been outweighed or displaced by the IJ's finding that country conditions in Albania had changed. That said, it would in most cases be useful for the IJ to make a finding expressly to that effect.

\* \* \* \* \* \*

 Where an IJ's decision "omit[s] potentially significant facts" so fundamental to the claim that "we are unable adequately to consider whether substantial evidence supports the BIA's determination," we may remand for further consideration. *Tian–Yong Chen v. INS*, 359 F.3d 121, 127–28 (2d Cir.2004). But we may affirm a finding "even when the IJ's reasoning is deficient in certain respects, provided that despite any errors—considered in the context of the IJ's entire analysis—we can state with confidence that the IJ would adhere to his decision if we were to remand." *Xiao Ji Chen*, 434 F.3d at 158; *see also Cao He Lin*, 428 F.3d at 401 ("[W]e are not required to remand where there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion."); *see also NLRB v. Wyman–Gordon Co., Inc.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) ("[*SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943),] does not require that we convert judicial review of agency action into a ping-pong game" and remand is not required where it "would be an idle and useless formality."); *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 246–48, 84 S.Ct. 1236, 12 L.Ed.2d 268 (1964) (same); *cf. Ucelo–Gomez v. Gonzales*, 464 F.3d 163, 170 (2d Cir.2006) (per curiam) (holding no remand necessary

where a court "can rule now with assured confidence that petitioners are or are not part of a particular social group" under the INA).

Hoxhallari—like many Albanians—may well have suffered past persecution based on political opinion at the hand of the Hoxha regime; and he may have a subjective fear of future persecution based on his Democratic Party affiliation. But there is no doubt that there has been a fundamental change in the political structure and government of Albania, beginning in 1990. While Democrats have not been continuously in power, the IJ's perfunctory finding of changed conditions in Albania is adequate. We can therefore state with assured confidence that remand would be futile and an unwise use of judicial and administrative resources.

### C. CAT Claim

 Hoxhallari failed to raise his CAT claim before the BIA. Because he did not exhaust his administrative remedies before the BIA, this Court lacks jurisdiction to address this category of relief. *See* 8 U.S.C. § 1252(d); *Gill v. INS,* 420 F.3d 82, 86 (2d Cir.2005).

### CONCLUSION

For the foregoing reasons, the petition is DENIED. Because we have completed our review, any outstanding motion for a stay of removal is DENIED as moot.