**YLBER TYLI, Suzana Tyli, Edison Tyli, Jurgen Tyli, Petitioners,**

v.

**BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES, Respondent.**

Nos. 03–40980–ag, 03–40981–ag, 04–4943–ag, 04–4938–ag.

United States Court of Appeals, Second Circuit.

March 29, 2007.

Theodore N. Cox, New York, NY, for Petitioners Ylber Tyli, Suzana Tyli, Edison Tyli, and Jurgen Tyli.

Audrey B. Hemesath, Assistant United States Attorney, for McGregor W. Scott, United States Attorney, Sacramento, CA, for Respondent Bureau of Citizenship and Immigration Services.

PRESENT: Hon. ROBERT D. SACK, Hon. B.D. PARKER, Hon. PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Petitioners Ylber Tyli, Suzana Tyli, Edison Tyli, and Jurgen Tyli, natives and citizens of Albania, seek review of the October 28, 2003 order of the Board of Immigration Appeals ("BIA") affirming the April 26, 2002 decision of Immigration Judge ("IJ") Philip Morace denying the Tylis' applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Suzana Tyli*, Nos. A79 323 240, A79 323 241, A79 323 242, A79 323 243 (B.I.A. Oct. 28, 2003), *aff'g* Nos. A79 323 240, A79 323 241, A79 323 242, A79 323 243 (Immig. Ct. N.Y. City April 26, 2002). Petitioners also seek review of the August 17, 2004 order of the BIA denying their motion to reopen proceedings. *In re Suzana Tyli*, No. A79 323 240 (B.I.A. Aug. 17, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When, as here, the BIA affirms the decision of the IJ without opinion, this Court reviews the decision of the IJ directly. *Secaida–Rosales v. I.N.S.*, 331 F.3d 297, 305 (2d Cir.2003). We review the factual findings of the IJ under the substantial evidence standard. *See Alvarado–Carillo v. I.N.S.*, 251 F.3d 44, 49 (2d Cir.2001).

Under this standard, a finding will stand if it is supported by "reasonable, substantial, and probative" evidence in the record when considered as a whole. *Diallo v. I.N.S.*, 232 F.3d 279, 287 (2d Cir.2000) (citation and internal quotation marks omitted).

The petitioners' claims stem from the involvement of Suzana Tyli and Ylber Tyli in the Democratic Party and the December 13th organizations in Albania, and their fear that, if returned to Albania, their family will be persecuted due to their political beliefs. At their hearing on April 26, 2002, Suzana Tyli testified that she had been detained, beaten, and tortured by the communist police, who tried to rape her, and that she was later threatened by armed officials who came to her house. Ylber Tyli testified that he was detained for two days as a result of his political beliefs, and, years later, was attacked in his home by the police. After hearing this testimony, the IJ denied the petitioners' claims on the basis of adverse credibility determinations.

When an IJ rejects an applicant's testimony based on an adverse credibility determination, the IJ must provide "specific, cogent" reasons for doing so. *Secaida–Rosales*, 331 F.3d at 307 (citation and internal quotation marks omitted). Those reasons must bear a legitimate nexus to the finding, and must be "valid grounds" for disregarding an applicant's testimony. *See id.* (citation and internal quotation marks omitted). The use of appropriate standards in making credibility determinations is particularly important where, as here, the main source of evidence is the petitioners' testimony. *Id.* "[U]sing an inappropriately stringent standard when evaluating an applicant's testimony constitutes legal, not factual error, and we review de novo whether such a standard has been used." *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400 (2d Cir.2005) (citation and internal quotation marks

omitted). While the IJ is in the best position to make a credibility determination, this Court has held that "[a]dverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." *Secaida–Rosales*, 331 F.3d at 307 (citation and internal quotations omitted).

Reviewing the reasoning of the IJ, we find that the IJ based his adverse credibility determinations on perceived inconsistencies that either resulted from excess speculation or inappropriate conclusions, or were not substantial enough to defeat the Tylis' claims.

■ The IJ indicated five main factors that led to his findings of adverse credibility. First, the IJ was concerned that Ms. Tyli testified that she was left on the street after being detained by the Albanian police at 1:30 AM on the morning of June 13th, while her hospital report is dated June 12th. This is a small and understandable inconsistency given the time of the incident in question—after midnight, only an hour and a half into June 13th. Given that this inconsistency is "relatively minor," it does not, on its own, call into doubt all of Ms. Tyli's testimony. *See Diallo*, 232 F.3d at 288.

Second, the IJ called into question Ms. Tyli's claim that the police had tried to rape her. Ms. Tyli's medical records following the incident state that she was hospitalized for "family reasons." Ms. Tyli testified that the records state "family reasons" because she asked the doctor not to write down that the police had attempted to rape her. This fact disturbed the IJ not only because it revealed an inconsistency between a document and Ms. Tyli's testimony, but also because it did not come out until the IJ questioned her about it. Given Ms. Tyli's plausible explanation for the inconsistency, we believe that the IJ engaged in inappropriate "speculation" by concluding that Ms. Tyli was deliberately

deceiving him on this matter. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.2004).

Third, the IJ found that Ms. Tyli's testimony was "generalized and vague with regard to her political activities," and was particularly disturbed that he had to ask Ms. Tyli four times before she described her political beliefs. However, Ms. Tyli's responses to the IJ's questioning indicate that she may have misunderstood the questions.[1] After Ms. Tyli described her political activities, the IJ asked her, "you're telling me that you were arrested, your husband was beat up, you were attempted rape, over issues like that?" (sic) The IJ's doubt that the Tylis would be subjected to political persecution for participating in meetings and demonstrations was based on the kind of cultural assumptions of which this Court has disapproved. *See Cao He Lin*, 428 F.3d at 405.

Fourth, the IJ cited the fact that Mr. Tyli "changed [his] story" regarding a card issued to him by the December 13th organization; Mr. Tyli first stated that he had obtained the "booklet" himself in Albania, but later testified that his sister had sent the membership booklet to him. Given the extensive testimony of Mr. Tyli, this small inconsistency would not be enough, on its own, to defeat Mr. Tyli's credibility. Similarly, the final reason that the IJ found Mr. Tyli to be incredible—his "vague and generalized" testimony—is undermined by the fact that the IJ credited the majority of Mr. Tyli's testimony, finding that "the demonstrations and subsequent harm that he suffered did indeed occur."

In sum, we find that the inconsistencies pointed to by the IJ were either inappropriate to consider or were not so substantial that they addressed "the heart of the claim," *see Secaida–Rosales*, 331 F.3d at 308. This Court may affirm an adverse credibility finding "even when the IJ's reasoning is deficient in certain respects ... [when] we can state with confidence that the same decision would be made if we were to remand," *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 335 (2d Cir.2006). However, in the petitions before us, it is difficult to determine whether the IJ would have granted the petitions had he not based his adverse credibility determination on inappropriate factors. Accordingly, we remand the petitions to the IJ for such a finding. *See Cao He Lin*, 428 F.3d at 401. Because we are remanding the petitions to the IJ, we need not review the BIA's denial of the petitioners' motion to reopen the proceedings.

We note that, on remand, the IJ may wish to consider the effect of changed country conditions in Albania on the petitioners' claims of future persecution. Since the time of the IJ and BIA's orders, we have taken judicial notice that "there has been a fundamental change in the political structure and government of Albania, beginning in 1990," *Hoxhallari v. Gonzales*, 468 F.3d 179, 188 (2d Cir.2006), and held that an immigration judge "need not enter specific findings premised on record evidence when making a finding of changed country conditions" in asylum cases based on persecution due to Democratic Party affiliation in Albania. *Id.* at 187; *see also Gjolaj v. Citizenship & Immig. Serv.*, 468 F.3d 140, 143 n. 2 (2d Cir.2006); *Latifi v. Gonzales*, 430 F.3d 103, 106 n. 1 (2d Cir.2005) (per curiam)

---

1. The IJ asked Ms. Tyli to "pretend we're in the year 2000 in Albania and I'm not sure who to vote for. Please convince me to vote for the democratic party." **A 102** Ms. Tyli responded by describing how she would recruit voters, rather than explaining what it is she would say to those voters. **A 102–103** It thus appears that she initially misunderstood the question.

(taking judicial notice of the Democratic Party's return to power in July 2005).

For the foregoing reasons, the petition for review is GRANTED and the case is REMANDED to the immigration court.