Singh v. Garland

BIA
Thompson, IJ
A205 928 500

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of March, two thousand twenty-two.

PRESENT:
JOHN M. WALKER, JR.,
REENA RAGGI,
SUSAN L. CARNEY,
    *Circuit Judges.*

_____

BALBIR SINGH,
    *Petitioner*,

v.                                                     19-3030
                                                       NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
    *Respondent*.

_____

FOR PETITIONER:          Deepti Vithal, Esq., Richmond Hill, NY.

FOR RESPONDENT:          Ethan P. Davis, Acting Assistant Attorney General; Carl McIntyre, Senior Litigation Counsel; Brooke

M. Maurer, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Balbir Singh, a native and citizen of India, seeks review of an August 23, 2019 decision of the BIA affirming a November 14, 2017 decision of an Immigration Judge ("IJ") denying asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and humanitarian asylum. *In re Balbir Singh*, No. A 205 928 500 (B.I.A. Aug. 23, 2019), *aff'g* No. A 205 928 500 (Immig. Ct. N.Y.C. Nov. 14, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) (reviewing factual findings for substantial

2

evidence and questions of law de novo).

Where, as here, the agency concludes that an asylum applicant suffered past persecution, the applicant is entitled to a presumption of future persecution. 8 C.F.R. §§ 1208.13(b)(1) (asylum), 1208.16(b)(1)(i) (withholding of removal). The burden then shifts to the Government to show, by a preponderance of the evidence, that there has been a fundamental change in circumstances in the country of removal or that the applicant could safely relocate within the country of removal to avoid future persecution. 8 C.F.R. §§ 1208.13(b)(1) (asylum), 1208.16(b)(1)(i) (withholding of removal); *Kone v. Holder*, 596 F.3d 141, 147 (2d Cir. 2010). We find no error in the agency's conclusion that the Government demonstrated that Singh could internally relocate.

Singh was threatened or attacked by Congress Party members in 2012 and 2013 near his home in Bhadas, Punjab. Singh testified that he feared persecution from the Congress Party due to his Sikh religion and membership in the Mann Party, but he also acknowledged that the Mann Party had branches in states across India, that there were large Sikh populations outside of Punjab, and that the Congress Party

3

did not control the federal government or a large number of state governments. Singh argues that he would face persecution across the whole of India due to tenant registration systems that would track his movement and allow police and Congress Party members to locate and harm him. But the evidence he relies upon—a 2013 report from the Immigration and Refugee Board of Canada—states that tenant registration "varies from state to state" and "largely it is non-existent in most cities and states." Certified Administrative Record ("CAR") at 760. Moreover, there is no indication that Indian authorities use the registration system to track or persecute Sikhs or Mann Party members. *See Singh v. Garland*, 11 F.4th 106, 117 (2d Cir. 2021). By contrast, a 2015 report issued by the United Kingdom concluded that although Sikhs were attacked in the 1980s and may suffer lingering distrust in some areas, "there is little discrimination" or "no discrimination" against Indian Sikhs in the modern day. CAR at 275; *see also Singh v. Garland*, 11 F.4th at 118 ("An Indian citizen such as Singh is unlikely to face persecution for his Sikh beliefs and his membership in [the Mann Party,] and any threat faced by [such an

4

applicant] in India is not country-wide." (internal quotation marks omitted)).   Singh has identified no contradictory country-conditions evidence.

Given evidence that Singh could safely relocate, and that it would be reasonable to expect him to do so, *see Singh v. Garland*, 11 F.4th at 117 (identifying no relocation difficulties for Sikhs living in India), the agency reasonably concluded that the Government rebutted the presumption of future persecution.   This finding is dispositive of Singh's application for asylum, withholding of removal, and CAT relief.   *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(B), 1208.16(b)(1)(i)(B); *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010).

Singh also requested humanitarian asylum, which may be granted in the absence of a well-founded fear of persecution if the applicant demonstrates either "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "a reasonable possibility that he or she may suffer other serious harm upon removal."   8 C.F.R. § 1208.13(b)(1)(iii); *see also Matter of Chen*, 20 I. & N. Dec. 16, 19 (B.I.A. 1989).   Humanitarian

5

asylum is granted only "in certain rare cases," *Mirzoyan v. Gonzales*, 457 F.3d 217, 220 (2d Cir. 2006), and in "the decision-maker's discretion," 8 C.F.R. § 1208.13(b)(1)(iii). The agency's denial of this relief is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D); *see also* 8 C.F.R. § 1208.13(b)(1)(iii); *Wu Zheng Huang v. INS*, 436 F.3d 89, 96–97 & n.9 (2d Cir. 2006). We find no abuse of discretion in the agency's decision on this record to deny humanitarian relief.

For humanitarian asylum based on the severity of past persecution, the applicant must establish both "severe harm and the long-lasting effects of that harm." *Jalloh v. Gonzales*, 498 F.3d 148, 151 (2d Cir. 2007) (internal quotation marks omitted). Singh asserts that his beatings were "severe past harm" entitling him to humanitarian asylum and that he has suffered long-lasting pyschological effects. But in considering whether the severity of past persecution is sufficient to warrant granting humanitarian asylum, the agency considers the "degree of harm suffered by the applicant" and "the length of time over which the harm was

6

inflicted." *In re N-M-A-*, 22 I. & N. Dec. 312, 326 (B.I.A. 1998). Singh reported only two physical altercations with members of the Congress Party, neither of which produced lasting physical injury. Accordingly, the agency did not abuse its discretion in concluding that neither the degree nor duration of Singh's harm were of a severity that warranted humanitarian asylum. *See, e.g., Hoxhallari v. Gonzales*, 468 F.3d 179, 182, 184 (2d Cir. 2006) (harm not sufficiently "atrocious" where supporter of Albanian Democratic Party was beaten and harassed on six occasions).

Finally, Singh alleges that he will suffer "other serious harm" if he returns to India because of the likely psychological effects stemming from the harm inflicted on him in the past. Although Singh provided a social worker's evaluation of his condition, which concluded that he had "symptoms consistent with" post-traumatic stress disorder and "would suffer severe detriment to his psychological, emotional, and physical functioning, possibly resulting in a suicide attempt," CAR at 210-11, we defer to the agency in its decision to accord this evidence limited weight. *See Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). The agency's

7

finding that the social worker's conclusion was speculative is not clearly erroneous and does not rest on a legal error because, *inter alia*, the record is unclear as to the extent of Singh's contact with the social worker, and there is no indication of suicidal ideation in her report or elsewhere in the record. Apart from three or four conversations with the social worker prior to preparation of the report, Singh had not sought any treatment for his psychological issues.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court