NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0396n.06
Filed: July 1, 2008

No. 07-3490

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PAL RRANXBURGAJ, et al.,                    )
                                            )        PETITION FOR REVIEW OF
        Petitioners-Appellants,             )        AN ORDER OF THE BOARD
                                            )        OF IMMIGRATION APPEALS
v.                                          )
                                            )            O P I N I O N
MICHAEL B. MUKASEY,                         )
                                            )
        Respondent-Appellee.                )

BEFORE:    SILER and COLE, Circuit Judges; and CLELAND, District Judge.[*]

    **CLELAND, District Judge.** Petitioner Pal Rranxburgaj and his family petition for review

of an order of the Board of Immigration Appeals ("BIA") denying their claim of asylum. Petitioners

raise various procedural and substantive challenges to the denial of their petition. We deny review.


                                           I.

    Petitioners Pal Rranxburgaj, Marije (his wife), Alfons (his son) and Mirela (his daughter) are

natives and citizens of Albania.[1] Petitioner and his wife entered the United States on June 3, 2000

as visitors for pleasure authorized to stay not past December 2, 2000. Mirela and Alfons entered

without inspection near Brownsville, Texas on December 20, 2000 and December 31, 2000,

_____

    [*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

    [1]As lead Petitioner, Pal Rranxburgaj is referred to as "Petitioner" and his co-petitioner family
members are referred to by their first names.

respectively. Petitioner filed an application for asylum and withholding of removal on May 14, 2001. The immigration officer who received the application found that Petitioner's testimony was not credible and referred the matter to an immigration judge. Petitioner's application detailed a history of political activity in Albania's then-opposition Democratic Party, which resulted in various detentions, beatings and other adverse consequences by governmental authorities against Petitioner.

Petitioners conceded removability at their November 13, 2001 hearing but requested asylum as relief from removal. Petitioner's family members did not file separate asylum applications; their relief was contingent as domiciliaries upon Petitioner's successful request. The immigration judge heard evidence at a separate hearing and, on December 9, 2002, rendered an oral decision granting asylum. The immigration judge referred to Petitioner's approximately 120-page memorandum describing "conditions in Albania" and "the problems that [Petitioners] have experienced." The immigration judge also referred to documentary evidence supporting Petitioner's medical injuries and "political activities in opposition to the Albanian government," although the immigration judge also observed that the record could have been better developed by, among other things, a medical examination in the United States and color photographs of Petitioner's scars and other signs of mistreatment. The immigration judge also referenced a Department of State profile report about Albania. The immigration judge later noted that the most recent report at the time judged Albania's human rights record as "poor" and that police there "beat and otherwise abused suspects, detainees, and prisoners."

The immigration judge heard Petitioner's testimony and found him credible in his testimony regarding a series of arrests and "significant physical mistreatment" in Albania from late 1990 to

August 1999. The immigration judge considered inconsistencies in Petitioner's claims and the fact that he obtained a government-issued passport from Albania after his alleged problems with the government, but the judge believed Petitioner's account that he obtained the passport after coming out of hiding and while avoiding his home area where he experienced problems. The immigration judge also credited the testimony of a non-family character witness who visited Albania in 2001 and spoke with Petitioner's concerned brothers.

Respondent appealed the grant of asylum to the BIA and, while the appeal was pending, filed a motion to remand. The motion to remand relied upon new evidence obtained in an April 30, 2003 investigation report ("Embassy Report") from the American Embassy in Albania concluding that Petitioner presented fraudulent documents as part of his asylum application. The BIA remanded the matter, which was assigned to a different immigration judge because the first judge was a visiting judge from Seattle. The BIA reasoned that remand was appropriate because Petitioner submitted the allegedly fraudulent documents thirteen days before the immigration judge's decision and it took four and a half months for the embassy to complete its investigation. Therefore, the BIA concluded that this evidence could not have been presented at the earlier hearing.

On remand, the immigration judge considered the new evidence, including an affidavit seeking to rebut part of the Embassy Report, and issued a written decision on October 3, 2005 denying asylum and ordering Petitioners deported to Albania. The immigration judge found that Petitioner lacked credibility because he "submitted fraudulent documentation as corroborating evidence to support his claims of past persecution and a well-founded fear of future persecution." The immigration judge noted that Petitioner submitted no evidence to rebut the Embassy Report's

conclusion that he presented a counterfeit police certificate claiming that Albanian police arrested Petitioner's son. With respect to medical documentation, the immigration judge concluded that Petitioner did not provide sufficient evidence to rebut the Embassy Report. The immigration judge concluded that the false evidence constituted "essential elements of [Petitioner's] asylum claim" and "[t]he bottom line is that [Petitioner's] submission of fraudulent documents has discredited his claims for asylum and withholding of removal and, therefore, his applications for relief must be denied."

The immigration judge also presented an alternative basis for denying asylum. The immigration judge found that, even if Petitioner's claim were deemed credible, changed country conditions in Albania rebut Petitioner's presumption of a well-founded fear of prosecution. Therefore, according to the immigration judge, Petitioner failed to show a likelihood of persecution upon return to Albania. According to the 2004 country report, there were no political killings, Albania's human rights record improved noticeably after 1998 and political activities such as elections have been generally free of violence and police interference since 2000.

Petitioner appealed this decision to the BIA, which dismissed the appeal on April 6, 2007. The BIA agreed that the immigration judge could base an adverse credibility determination upon the unrebutted false police report that Petitioner submitted. The BIA also affirmed the alternative holding that changed country conditions were a sufficient basis to deny the asylum claim.

**II.**

When the BIA includes its own commentary while adopting the decision of the immigration

judge, this court reviews both decisions. *Lazar v. Gonzales*, 500 F.3d 469, 474 (6th Cir. 2007). For final orders of removal, factual findings are reviewed under the substantial evidence standard. *Mostafa v. Ashcroft,* 395 F.3d 622, 624 (6th Cir. 2005). Under that standard, "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft,* 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)); *see also INS v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992) (requiring that the evidence "compel" an alternate conclusion before reversing the BIA); *Ouda v. INS,* 324 F.3d 445, 451 (6th Cir. 2003) ("[T]he petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution."). Constitutional questions and questions of law, such as application of law to undisputed or adjudicated facts, are reviewed *de novo*. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630 (6th Cir. 2006). The Sixth Circuit reviews de novo alleged due process violations in removal hearings. *Mikhailevitch v. INS,* 146 F.3d 384, 391 (6th Cir. 1998).

### A. Petitioner's Due Process Challenges

Petitioner's proceedings did not deprive him of due process of law. "We have stated that Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing. To constitute fundamental unfairness, however, a defect in the removal proceedings must have been such as might have led to a denial of justice." *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008) (quotations omitted). Petitioner must prove prejudice to establish a violation of due process. *Warner v. Ashcroft,* 381 F.3d 534, 539 (6th Cir. 2004) (citations omitted). "Therefore, reviewing an alleged due process violation is a two-step inquiry:

first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Ndrecaj*, 522 F.3d at 673.

Petitioner contends that the decision to remand constituted a violation of due process because the BIA did not adhere to its own precedent when it remanded to another immigration judge. *See* 8 C.F.R. § 1003.2(c)(1) (2008). The record, however, reflects that the BIA acted reasonably and in accord with its regulations when it remanded the matter following the presentation of new evidence contained in the Embassy Report, which Respondent did not receive until after the initial grant of asylum. There was thus no defect in the proceedings. Petitioner questions the delay between when Respondent inquired with the American Embassy in Albania and the dates when the embassy received the inquiry and issued its report. Despite that delay, and whatever its cause, it is undisputed that Respondent had less than two weeks before the hearing to examine the authenticity of Petitioner's supporting documentation. However long the document investigation should have taken, it is apparent, given the nature of the investigation, the geographic distance and bureaucratic levels involved, that a thirteen-day turnaround would have been impossible. Respondent objected on authenticity grounds and then followed up with a thorough embassy investigation of fraud, which presented attendant and inherent logistical difficulties of distance, different time zones, language translation and the like. Petitioner argues that Respondent should have pressed authenticity, before knowing any facts to establish or suspect fraud, and requested a delay of the removal hearing. Such a requirement would present significant burdens upon Respondent and a system-wide logjam of all cases for the marginal benefit of rooting out fraud in an unknown fraction of the cases. Under the circumstances, we conclude that the decision to remand created no defect in the proceedings and did

not form prejudice of a constitutional dimension for Petitioner.

Further, Petitioner cites no authority establishing that he had a right to a particular immigration judge.[2] "A *neutral* judge is one of the most basic due process protections." *Reyes-Melendez v. INS,* 342 F.3d 1001, 1006 (9th Cir. 2003) (emphasis added, internal quotation omitted). "It is undisputed that petitioners in such proceedings are entitled to an unbiased arbiter who has not prejudged their claims." *Ahmed v. Gonzales,* 398 F.3d 722, 725 (6th Cir. 2005). The record in this case does not suggest that the second immigration judge approached the case with a closed mind or a partial position. Because the first immigration judge was a visiting judge from Seattle, it was sensible for the parties to present the case live to a different immigration judge in Detroit. Nor does Petitioner cite persuasive authority requiring Respondent to make a remote judge available by teleconferencing technology. The lack of such a requirement perhaps reflects the inherent drawbacks of judging the credibility of live testimony transmitted remotely through technology that is confining in many material respects. In light of these unavoidable shortcomings, there was no reversible error in the determination that the original immigration judge was unavailable pursuant to 8 C.F.R. § 1240.1(b).

Petitioner styles other arguments[3] as due process concerns, but they are in fact challenges on the merits to the adverse credibility determination of the second immigration judge. As explained

---

[2]Petitioner only objected to the new immigration judge *after* the denial of asylum.

[3]Petitioner's due process challenges are made in passing and not cogent in their presentation. At their core, they claim that the second immigration judge "failed to consider" certain evidentiary problems. Petitioner's argument draws no distinction between disagreements on the merits and constitutional deprivation of due process.

below, the record demonstrates that this immigration judge gave due weight and consideration to the previous factual findings, but counterbalanced them against the new evidence of fraud and the changed country conditions. Disagreement with the conclusions of the original immigration judge does not necessarily mean that the arbiter had a bias that "threatened the fundamental fairness of the hearing." *Ndrecaj*, 522 F.3d at 673. Further, any alleged prejudice to Petitioner is of no constitutional moment, as the denial of asylum finds adequate support in the adverse credibility determination and changed country conditions.

## B. Factual Findings

Credibility determinations in asylum proceedings depend on "all relevant factors," including the applicant's demeanor and the consistency and plausibility of the various statements. 8 U.S.C. § 1158(b)(1)(B)(iii); *see also* 8 U.S.C. § 1229a(c)(4)(C) (2008) (applying the same credibility test to statements made in a removal proceeding). "Credibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard. This is a deferential standard: A reviewing court should not reverse simply because it is convinced that it would have decided the case differently." *Sylla v. INS,* 388 F.3d 924, 925 (6th Cir. 2004) (internal quotation marks and citation omitted); *see also Mapouya v. Gonzales,* 487 F.3d 396, 406 (6th Cir. 2007). "While an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Sylla,* 388 F.3d at 926 (citations omitted); *see also Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005).

The factual basis for the adverse credibility determination in this case is an April 30, 2003

Embassy Report that calls into question a medical document and an Albanian police certificate that Petitioner submitted in support of his asylum application. The Embassy Report identifies the investigator and his qualifications. He interviewed Zeqir Duka, a coroner who denied any record of Petitioner, including the genuineness and accuracy of an October 25, 2000 certificate that Petitioner used in his asylum application stating that he was treated for wounds after being struck by hard objects at a 1991 demonstration. Petitioner submitted a rebuttal affidavit signed by "Licensed Forensic Physician" Zeqir Duka and stating that Petitioner indeed complained of those injuries in 1991. Elsewhere, the declaration is from a primary care doctor with a different spelling - "Zeqir Dukaj" and a noticeably different signature. The record therefore fails to present an equivocal answer to the kind of doctor involved, the spelling of his name and, importantly, whether he can corroborate the persecution that Petitioner claims. Under these circumstances, the record compels no conclusion, including the one that Petitioner advances: that he rebutted the Embassy Report. Because the apparent contradictions are material and not adequately explained, there is substantial evidence to support the adverse credibility determination. Moreover, the contradictions touch upon a central component of Petitioner's asylum application: whether he was beaten at a 1991 demonstration and subsequently treated by a disinterested party who could corroborate the claim.

The Embassy Report also states that a November 11, 2000 police certificate documenting the arrest of Petitioner's son was false according to an Albanian police official who stated in 2003 that no such certificate was ever issued. Petitioner challenges this portion of the report as suspect and unreliable because it is unclear whose statement the report memorialized and because no separate document or declaration verifying the report was filed. Petitioner also argues that "[a] response by

anyone other than the person who issued the original certificate is immaterial." But the response came from the director of the same district's Police Commissariat, a high-ranking official who presumably bears responsibility for all his office's records, and not just those that he personally issued. Further, a fair reading of the report presents no ambiguity; the police director, and not the consular investigator, determined that Petitioner's certificate was not authentic. At the very least, the Embassy Report raises questions about the police certificate that undercut the reliability of key evidence presented to support Petitioner's claim that his son was also detained by Albanian authorities. Again, the record compels no conclusion in either direction, including whether Petitioner rebutted the Embassy Report.

The Sixth Circuit has repeatedly held that submission of even one fraudulent document in support of a key element of an asylum claim is "sufficient to support an adverse credibility determination." *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005) (citations omitted); *see also Yongo v. INS*, 355 F.3d 27, 33 (1st Cir. 2004); *Akinmade v. INS*, 196 F.3d 951, 956 (9th Cir. 1999). In *Selami*, the petitioner presented a false Albanian newspaper article purporting to identify him as an anti-Communist who was forced to flee the "Red Terror" of the Neo-Communists. 423 F.3d at 623-24. The article in question appeared in a different format than the rest of the newspaper submitted and the Library of Congress later verified that it was a forgery. *Id.* at 624. The petitioner had no rebuttal other than claiming the matter was not central to his claim and that he was unaware of the forgery because his father sent him the article. *Id.* at 625-26.

In this case, the alleged forged documents are not obviously false or so weakly defended, but the matters called into question are just as central to the asylum claim. Further, the Embassy Report

constitutes an adequate quantum of evidence under the applicable standard of review. While a tribunal in the first instance might have made a different credibility determination, the record before this court does not compel a contrary determination. We must therefore defer to the judgment of the immigration judge. All relevant factors do not point inexorably to only one possible credibility determination. Finally, as explained below, the changed country conditions provide an independent and adequate basis for the decision of the BIA.

### C. Changed Country Conditions

To claim asylum protection, Petitioner must demonstrate that he is a refugee as defined in 8 C.F.R. § 208.13. A refugee seeking asylum must demonstrate a well-founded fear of future persecution. 8 C.F.R. § 208.13(b) (2008). For established cases of past persecution, a petitioner has a presumption of a well-founded fear of future persecution, but that presumption may be rebutted. § 208.13(b)(1). In this case, Petitioner claims that his political activities aimed at democratic reform caused him and his family to suffer various forms of retribution. He alleges that he suffered a series of beatings and detentions from about 1990 until late 1999.

Subsequent electoral change and other developments in Albania led to a very different assessment by the United States Department of State in 2004. The 2004 country report found no political killings, noticeable improvement in Albania's human rights record after 1998 and a political environment generally free of violence and political interference since 2000. The immigration judge noted these changes and observed that they would control even if Petitioner's claim of past persecution was credible. Petitioner, according to the BIA, did not "meaningfully address" the changed country conditions in his appeal. Indeed, Petitioner's brief to the BIA was silent on the

issue and his notice of appeal to the BIA was incorrect because it stated that the immigration judge

relied on generally changed country conditions to discredit an otherwise credible claim. The

immigration judge actually assumed the credibility of the claim but found that it was nonetheless

untenable because the changed country conditions rebutted any presumption of a well-founded fear

of persecution. We further note that the first immigration judge expressly relied on an earlier

country report and upon "conditions in Albania" when he granted asylum. Despite Petitioner's

objections, it was thus altogether appropriate for the second immigration judge to give due weight

to the updated country report and the new conditions in Albania.

The Sixth Circuit has previously relied upon Albania's changed country conditions in

affirming the denial of an application for asylum and withholding of removal. *See Ndrecaj*, 522 F.3d

at 676. The court rejected challenges raising due process concerns, *id*. at 673, and questioning the

adverse credibility determination of the immigration judge, *id*. at 674-76. Turning to the changed

country conditions, the court relied in part upon the petitioner's admission that he did not fear

Albania today, but rather the possibility that the previous ruling party would retake power by force.

*Id*. at 676. The court noted the 2004 Department of State Country Report, as well as a media report

that the Democratic Party of Albania had won an election in Albania. *Id.* According to the Sixth

Circuit:

> Thus, on the basis of published reports of Albania's political development, we have
> previously stated that the conditions in Albania are "fundamentally changed," and we
> cannot fault the IJ for reaching the same conclusion. Given Ndrecaj's admission that
> he can return to Albania and his failure to show any real threat of individualized
> persecution, we must agree with the IJ that the changed country conditions provide
> an independent basis for the IJ's finding of a failure to show a well-founded fear of
> future persecution.

*Id.* at 676-77 (quoting *Liti*, 411 F.3d at 640).

The most salient distinction in this case is that Petitioner continues to express a vigorous subjective belief that he would be persecuted if returned to Albania. But it is a distinction that makes no difference in the outcome, because a fear of future prosecution must be "both subjectively genuine *and* objectively reasonable." *Mikhailevitch*, 146 F.3d at 389 (emphasis added, citation omitted). Petitioner "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Mapouya*, 487 F.3d at 412 (quotation omitted).

In this case, Petitioner's subjective fear is grounded without exception in pre-2000 allegations. Since then, according to the evidence considered by the immigration judge, Petitioner's political party has gained electoral success and the repressiveness of the ruling powers has subsided. There is, as other courts have held, simply no objective basis for Petitioner's current fear of future persecution. *See Hoxhallari v. Gonzales*, 468 F.3d 179, 187-88 (2d Cir. 2006); *Tota v. Gonzales*, 457 F.3d 161, 166-68 (1st Cir. 2006); *Shehu v. Gonzales*, 443 F.3d 435, 437-38 (5th Cir. 2006). The strength of this precedent and the lack of objective grounds for Petitioner's subjective fear of future persecution offer the most compelling grounds to affirm the decision to deny Petitioner's claim for asylum.

**III.**

For the foregoing reasons, we deny review of the decision of the BIA.