**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1243n.06

No. 12-3078

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Dec 04, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK SMAKAJ, RITA SMAKAJ, | ) | |
| AUREL SMAKAJ, | ) | |
| | ) | |
| Petitioners, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**BEFORE:  CLAY and STRANCH, Circuit Judges; BELL, District Judge.**[*]

**BELL, District Judge.** Lead Petitioner Mark Smakaj, his wife Rita Smakaj, and their son Aurel Smakaj, petition for review of a final order of the Board of Immigration Appeals (BIA) denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) and ordering them to be removed.  For the reasons that follow, we deny the relief requested in the Petition.

Petitioners are natives of Albania.  They left Albania on February 16, 2005, and entered the United States illegally on February 25, 2005.  On April 12, 2005, Smakaj filed an application for asylum and withholding of removal under sections 208 and 241(b)(3) of

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

the Immigration and Nationality Act (the "Act"), 8 U.S.C. §§ 1158, 123l(b)(3), as well as for

protection under Article III of the CAT, 8 C.F.R. §§ 1208.16, 1208.18. Smakaj's wife and

child sought relief as derivative applicants.

Following hearings on July 9, 2008, September 18, 2008, and June 18, 2009, the

immigration judge (IJ) denied Petitioners' requests for asylum, withholding of removal, and

protection under the CAT. The primary basis for the denial was the IJ's determination that

Smakaj's testimony was not credible. The IJ determined, in the alternative, that even if

Petitioners' assertions were believed, changed circumstances in Albania had extinguished

any legitimate fear of political repression. The IJ also determined that Petitioners'

application was frivolous. On December 29, 2011, the BIA issued a decision affirming the

IJ's denial of Petitioners' application for relief, but reversed the IJ's determination that the

petition was frivolous.[1]

In their petition for review, Petitioners argue that the BIA erred in affirming the IJ's

adverse credibility finding, and in affirming the IJ's denial of their applications for asylum,

withholding of removal, and protection under the CAT.

An applicant for asylum bears the burden of establishing that he is a "refugee," i.e.,

that he is unable or unwilling to return to his country "because of persecution or a

---

[1] Although the BIA reversed the IJ's determination that the petition was frivolous, the BIA noted that it was a close question.

well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008) (quoting 8 U.S.C. §§ 1158(b)(1)(B)(i), 1101(a)(42)(A)); s*ee also* 8 C.F.R. § 208.13 ( "The applicant [for asylum] may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."). "[T]he applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). "The burden of persuasion rests on the applicant, who must establish the truth of these facts by a preponderance of the evidence." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 456 (1987).

An applicant for withholding of removal bears the burden of establishing that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). An applicant for withholding of removal under the CAT bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

Where, as in this case, the BIA issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Dieng v. Holder*, No. 10-3497, 698 F.3d 866, 871 (6th Cir. 2012). To the extent the BIA

relied on the IJ's reasoning, however, we also review the IJ's decision. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review the BIA's factual findings under the "highly deferential substantial-evidence standard." *Dieng*, 698 F.3d at 871. "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Credibility determinations are findings of fact that are reviewed under the substantial evidence standard. *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). Accordingly, "[w]e will reverse a credibility determination only if any reasonable adjudicator would be compelled to conclude to the contrary." *Id.*

"While an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons." *Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004). Because Petitioners' case was filed before the effective date of the REAL ID Act,[2] the adverse credibility finding "must be based on issues that go to the heart of the applicant's claim" and not on an "irrelevant inconsistency." *Pergega v. Gonzales*, 417 F.3d 623, 627 (6th Cir. 2005) (quoting *Sylla*, 388 F.3d at 926)). "If discrepancies cannot be viewed as

---

[2]The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, changed the standard of proof for adverse credibility findings. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). These changes apply only prospectively to applications for asylum or withholding of removal made on or after the effective date of the Act, May 11, 2005. *Id.* Because Petitioners filed their asylum application on April 12, 2005, before the effective date of the REAL ID Act, the REAL ID Act amendments do not apply to this case.

attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id.* (quoting *Sylla*, 388 F.3d at 926).

The BIA accepted the IJ's adverse credibility finding and adopted and affirmed the IJ's conclusion that Petitioner did not meet his burden of proof to establish eligibility for asylum. The BIA specifically held that the inconsistencies concerning Smakaj's membership in the Republican Party, the incident at the rally in Tirana, and the attacks on his home were sufficient to support the IJ's adverse credibility determination. Petitioners challenge these adverse credibility findings.

First, Petitioners contend that their failure to mention Smakaj's membership in the Republican Party on their application was an oversight, and that they did provide documentation of his membership in the Republican Party.

The IJ determined that Smakaj's assertion that he simply forgot to disclose his membership in the Republican Party was not credible because the application specifically asked whether he had ever belonged to or been associated with any organizations or groups such as a political party, and he referred to many other political parties in his affidavit. Moreover, the IJ's adverse credibility determination regarding Smakaj's asserted membership in the Republican Party was not based solely on Smakaj's failure to disclose such membership in his application. In his oral decision, the IJ identified numerous additional inconsistencies and implausibilities relating to Smakaj's asserted membership in the

Republican Party, including the suspect nature of his documentation of party membership.

The party membership book was printed in New York rather than in Albania. Petitioner

presented two affidavits, ostensibly from the same leader of the local Republican Party, that

were inconsistent in content and had two different signatures. Petitioner's testimony

regarding the amount of the dues conflicted with the amounts reflected in the membership

book. In addition, Petitioner implausibly claimed that he continued to pay monthly dues

while in hiding with the help of his friends, despite the fact that the membership card did not

show payments during that period of time.

Second, Petitioners contend that the BIA erred in affirming the IJ's adverse credibility

determination with respect to the Tirana rally because Smakaj's inconsistent estimate of the

size of the crowd at the Tirana rally (70,000 or 100,000) was understandable, was not an

attempt to enhance his claim of persecution, and should have had no bearing on credibility.

Contrary to Petitioners' assertions, Smakaj's inconsistent estimate of the crowd size

was only one of many factors that caused the IJ to disbelieve his testimony regarding the

Tirana rally. The IJ noted that Smakaj testified that he attended many rallies, but was evasive

when asked about his personal experiences at these rallies. Although Smakaj testified to

details about the February 7, 2004 Tirana rally, the IJ found that testimony to be implausible.

Smakaj testified to a rapid succession of events, where he challenged a stranger in the crowd

who had thrown a rock, fell to the ground with the stranger, and was beaten by police. He

testified that three days later, two people in a black car came to his house and told his mother that Smakaj had wounded their friend Gazin at the rally, and that they intended to take revenge. Smakaj lived more than 150 kilometers from the site of the rally. Smakaj did not know anyone by the name of Gazin, and he could not explain how the individuals would have known who Smakaj was, or where he lived.

Third, Petitioners contend that the BIA erred in affirming the IJ's adverse credibility determination with respect to the attacks on their home because they contend there were no genuine inconsistencies.

The evidence of attacks on Petitioners' home include an incident on February 17, 2004, when Smakaj was cut off on the road and followed by a van. The IJ noted that Smakaj's testimony that he recognized the driver of the van as the person from the Tirana rally was inconsistent with his application where he stated that the individual was a passenger, not the driver. Smakaj's testimony that they shot at his car was inconsistent with his statement in his application that they shot into the air. Smakaj's testimony that he eluded the van by pulling into a dead-end street was inconsistent with his prior testimony that the assailants followed him into town but did not dare to shoot at him when they approached his house in town. The IJ was also skeptical about Smakaj's characterization of two other events as attacks on his home. Smakaj testified that on the night of March 20, 2004, he heard his guard dog barking, and the next morning found a can of gasoline by his car. The IJ

questioned why Smakaj would interpret this as a foiled attempt to burn his car rather than a foiled attempt to fill his car and drive it away. Smakaj testified that on January 26, 2005, his mother found their dog dead with white liquid foaming from its mouth. The IJ observed that Smakaj "jumped to the conclusion" that his dog had been poisoned.

Not every inconsistency and irregularity noted by the IJ suggests an effort on the part of Petitioners to enhance their claims of persecution. Nevertheless, the IJ has identified multiple inconsistencies and implausibilities that do go to the heart of Petitioners' claim that Smakaj has been persecuted for his political activities, especially with respect to his alleged involvement in the Republican Party and the actions allegedly taken against him because of that involvement. Petitioners have not shown that the evidence compels a different conclusion on the issue of Smakaj's credibility.

Because we uphold the BIA's adverse credibility determination, we also find that the BIA properly found that Petitioner failed to meet his burden of showing that he was a refugee, i.e., that he suffered past persecution or that he had a well-founded fear of future persecution. *See Ndrecaj*, 522 F.3d at 676 ("The IJ's finding that Ndrecaj was not credible prevented the IJ from finding that Ndrecaj established either past persecution or a well-founded fear of future persecution.")

In addition to the adverse credibility determination, the BIA also found an alternative basis for denying asylum. The BIA found that, irrespective of the adverse credibility

determination, the changed country conditions in Albania  removed any existing threat to Petitioners' lives and provided an independent basis for the IJ's finding that Petitioner failed to show a well-founded fear of future persecution.

The record contains ample evidence of changed circumstances in the country.  The Socialists, who Smakaj described as his enemies, are no longer in power.  Moreover, the 2008 United States Department of State Human Rights Report for Albania indicates that individuals were able to criticize the government publicly or privately without reprisal; that there were no reports of political prisoners or detainees, or of politically motivated disappearances; and that there were no reports that police arbitrarily denied the rights of individuals to assemble or mistreated protesters.  We have previously relied on Albania's changed country conditions in affirming the denial of an application for asylum and withholding of removal. *See Ndrecaj*, 522 F.3d at 676; *Rranxburgaj v. Mukasey*, 286 F. App'x 268, 275 (6th Cir. 2008).  Petitioners have not attempted to challenge the BIA's findings with respect to the changed country conditions.

Because Petitioners failed to meet their burden of proving eligibility for asylum, they also failed to meet the more stringent burdens required for withholding of removal or relief under the CAT.  *See Dieng,* 698 F.3d at 874 ("Since Dieng has failed to meet her burden of proving eligibility for asylum, she necessarily fails to meet the more stringent burden required for withholding of removal."); *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009)

("[A]n applicant who fails to establish his eligibility for asylum necessarily fails to establish his eligibility for withholding of removal."); *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (holding that adverse credibility finding precluded applicant from meeting her burdens of proof on asylum, withholding of removal, and protection under the CAT). Petitioners were therefore ineligible for withholding of removal under the Act or the CAT.

For the foregoing reasons, we **DENY** the Smakajs' petition for review of the BIA's removal order.