NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0567n.06

No. 25-3306

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 08, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| PARMINDER SINGH, | ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| v. | ) ) ) | |
| PAMELA BONDI, Attorney General, | ) ) | |
| Respondent. | ) ) | OPINION |

Before: SUTTON, Chief Judge; BOGGS and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Parminder Singh petitions for judicial review of a Board of Immigration Appeals decision affirming an immigration judge's denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture. Because substantial evidence supports the IJ's determination that Singh's testimony was not credible, we deny his petition for review.

**BACKGROUND**

Parminder Singh, a native and citizen of India, entered the United States without inspection in November 2018. Immigration officers apprehended him shortly thereafter. Within a few weeks, an asylum officer interviewed him regarding his credible fear of returning to India. During that interview, Singh stated that he joined a political party affiliated with the Sikh separatist movement, called the Mann Party, in January 2018 and that members of the rival Congress Party assaulted him twice.

The first assault occurred in June 2018. As Singh described in his interview, while hanging Mann Party posters advertising a blood donation drive, four Congress Party members confronted him, told him to join their party, and beat him when he refused. Afterward, a doctor treated Singh for facial bruising and stomach pain. He reported the incident to the police, but, citing the Congress Party's local political influence, they refused to accept or investigate his complaint.

The second assault happened two months later. As Singh told the asylum officer, when he was heading home from a wedding on his motorcycle, a vehicle driven by Congress Party members "came around [him] and stopped in front of [his] motorbike." A.R. 406. Then, five Congress Party Members exited the vehicle and began to beat Singh with sticks. Farmers came to Singh's aid and chased the men away, but the assailants threatened to kill Singh the next time they saw him. A doctor treated Singh with injections and pills for pain in his lower back and thighs.

Singh left India one month later to avoid future incidents with Congress Party members. His family paid an unnamed agent to arrange his travel, procure his passport and visas, and book flights. At the agent's direction, Singh traveled from India to the U.S. by way of several other countries. He first traveled to Thailand, then to Cambodia and Vietnam, returned to Thailand, and from there went to Mexico. Once in Mexico, the agent connected Singh with another unnamed person who took Singh's Indian passport and never returned it. This man eventually drove Singh to the U.S. border, where Singh entered without inspection.

The following year, Singh applied for asylum, citing his "[p]olitical opinion" as the basis for his application. *Id.* at 348. The IJ scheduled a hearing for the following month. In preparation for the hearing, Singh submitted affidavits of support from his mother, neighbors, and friends; his medical records; and country reports. At the hearing, Singh recounted the events of the two assaults. As relevant here, his account of both assaults differed from the story he told during the

credible fear interview. With respect to the first assault, Singh testified that the four men beat him because he refused to remove the posters he was hanging, not because he refused to join the Congress Party.

The discrepancy in Singh's recounting of the second assault was more significant. During the hearing, Singh testified that Congress Party members "hit [him] from behind with their car," knocking him off his motorcycle and onto the ground, after which the men beat him with hockey sticks. *Id.* at 124. He claimed that scars on his leg and arm resulted from skidding across the pavement after being knocked from the motorcycle. When the IJ questioned Singh about this inconsistency in his story—i.e., that he was now saying that the vehicle hit him when he had previously said that the car stopped in front of him—Singh stated he had been "very nervous" and "very scared" during the credible fear interview. *Id.* at 178. The IJ gave Singh multiple opportunities to explain the discrepancy, but Singh simply repeated that he had been scared and confused during the credible fear interview, could not remember what he told the asylum officer, and that he was now testifying truthfully at the hearing. Then, under questioning from his own attorney, Singh stated for the first time that both accounts were true—that members of the Congress party allegedly hit him from behind and then swung around to stop the vehicle in front of him.

The IJ denied Singh's applications for asylum, withholding of removal, and protection under the Convention Against Torture. The IJ found that Singh was not credible because: (1) his accounts of both assaults were inconsistent between the credible fear interview and his hearing testimony; (2) he could not persuasively explain why he failed to tell the asylum officer that the vehicle had struck his motorcycle during the second assault; (3) it was implausible that his medical records did not reflect more serious injuries or explain their cause, given the severity of the assaults he described; and (4) it was implausible that Singh knew virtually nothing about how an unnamed

agent arranged his circuitous travel through multiple countries or why the agent chose that route. Having concluded that Singh was not credible, the IJ denied Singh's claim for asylum and withholding of removal. But because an adverse credibility finding was not necessarily fatal to Singh's CAT claim, the IJ analyzed the objective evidence, ultimately concluding that it did not prove that Congress Party members more likely than not would torture Singh if he returned to India.

Singh appealed to the Board of Immigration Appeals, challenging only the IJ's adverse credibility determination. The Board affirmed the IJ's adverse credibility determination, noting that Singh gave inconsistent accounts of the second assault—regarding whether the vehicle struck his motorcycle—and that it was implausible Singh knew so little about the logistics of his travel from India to the United States. The Board also noted that because Singh had not appealed the IJ's denial of his claims on the merits, it would have denied his claims regardless of the IJ's adverse credibility determination. Singh then petitioned for our review.

## DISCUSSION

Singh argues that he was credible and so is eligible for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the Convention Against Torture (CAT). He also argues that the IJ was biased and failed to operate as a neutral arbiter, thereby depriving Singh of due process of law.

## I.     Adverse Credibility Determination

When an individual faces persecution if returned to their home country, American immigration law provides three primary forms of relief: asylum under 8 U.S.C. § 1158; withholding of removal under 8 U.S.C. § 1231(b)(3); and withholding of removal under the Convention Against Torture, as provided in 8 C.F.R. §§ 208.16–18. To qualify for asylum, an

applicant must meet the definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is "a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). To prevail on a petition for withholding of removal, an applicant must demonstrate that, if removed, it is more likely than not that they will be subject to persecution because of their race, religion, nationality, membership in a particular social group, or political opinion. *Marouf v. Lynch*, 811 F.3d 174, 179 (6th Cir. 2016). Finally, to be eligible for protection under the CAT, an applicant must show that it is more likely than not that they would be tortured if removed to another country. 8 C.F.R. § 1208.16(c)(2).

An IJ's first step in determining whether an applicant is eligible for any of these forms of relief is to determine that applicant's credibility. *Mapouya v. Gonzales*, 487 F.3d 396, 411 (6th Cir. 2007). When doing so, the INA instructs IJs to "[c]onsider[] the totality of the circumstances," including factors such as "demeanor, candor, or responsiveness"; the "plausibility" and "consistency of . . . statements"; and "any inaccuracies or falsehoods . . . without regard to whether [they] go[] to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see Slyusar v. Holder*, 740 F.3d 1068, 1075 (6th Cir. 2014). "The same credibility standard applies to claims for asylum, withholding of removal, and for relief under the torture convention." *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009).

The standard of review we apply to an adverse credibility finding is a tough one to satisfy. IJs have "substantial leeway to make the credibility call." *Masiko v. Holder*, 562 F. App'x 469, 472 (6th Cir. 2014). Indeed, "[a]n IJ's credibility determinations are considered findings of fact" and so we review them under a deferential "substantial evidence" standard. *Hachem v. Holder*,

656 F.3d 430, 434 (6th Cir. 2011). "That this Court could conceivably make a contrary conclusion is not enough to justify reversal of the IJ's decision; compulsion is required." *Slyusar*, 740 F.3d at 1073. As a result, adverse credibility determinations are final unless "any reasonable adjudicator would be compelled" to conclude otherwise. *Id.*

When the Board reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, this court reviews the Board's decision itself. *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). But, to the extent the Board adopts the IJ's reasoning, we also review the IJ's reasoning. *Id.* Here, the Board issued a separate opinion, relying on two of the four reasons cited by the IJ: (1) the inconsistency in Singh's retelling of the second assault, and (2) the implausibility that he would know so little about his travel from India to the United States. As such, those two bases "are the proper foci of review," to which we now turn. *Marouf*, 811 F.3d at 181.

### A.      Second Assault

Singh concedes that he gave different accounts of his second attack in his credible fear interview with the asylum officer and during his hearing before the IJ. Nevertheless, he maintains that the IJ "cherry pick[ed]" statements from the credible fear interview and the testimony presented at the hearing that gave rise to the inconsistencies in Singh's account of the attack. Pet'r Br. at 11. But an IJ can consider "any inaccuracies or falsehoods" in an applicant's statements, regardless of whether the "inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Slyusar*, 740 F.3d at 1072 (quoting 11 U.S.C. § 1158(b)(1)(B)(iii)).

Singh also suggests that a change of interpreters during his credible fear interview "may have" caused the inconsistency between his statements to the asylum officer and his hearing testimony. Pet'r Br. at 12. But he does not explain why this matters given his concession that he

offered inconsistent accounts of the second assault. And even if that were not the case, Singh did not raise this argument below and so he has forfeited it. *See* 8 U.S.C. § 1252(d)(1) (requiring administrative exhaustion).

Singh also suggests that the credible fear interview record is unreliable because it is not a verbatim transcript of his interview. But the credible fear interview contained sufficient "indicia of reliability" of the kind we have previously held is required for us to find an asylum interview credible—an oath was administered, Singh confirmed that he could understand the interpreter, and the summary included the questions asked and the answers provided. *See Koulibaly v. Mukasey*, 541 F.3d 613, 621 (6th Cir. 2008). And when testifying during his asylum hearing before the IJ, Singh again confirmed that he understood the interpreters at the interview and the questions posed by the asylum officer. Moreover, Singh's counsel did not otherwise challenge the reliability of the credible fear interview notes—including its description of the second assault—even though he had an opportunity to review them before the hearing.

Singh next argues that the IJ ignored his supporting affidavits. We note that Singh did not raise this argument before the Board and so has forfeited the argument. *See* 8 U.S.C. § 1252(d)(1) (requiring administrative exhaustion). And even if Singh had raised this argument below, his corroborating evidence does not help his credibility in the way that he claims because none of the affidavits from his mother and acquaintances address the IJ's concern with Singh's veracity. Indeed, none of those affidavits, nor the affidavits of the purported eyewitness to the assault or the Mann Party official, make any mention of Singh being struck by another vehicle.

### B. Travel Logistics

Substantial evidence also supports the IJ's determination that it was implausible that Singh never knew or asked about any of the details of his journey to the United States. Singh testified

that he traveled through multiple countries before coming to the United States under the direction of the agent hired by his parents. But when asked for additional information—the agent's name, the amount of money Singh's parents paid him, why he traveled back-and-forth between multiple countries before entering the United States—Singh continually answered that he did not know and was just following instructions.

Singh argues that the IJ did not explain why he found Singh's route from India to the United States to be implausible. To the contrary, the IJ explained that the implausibility finding was based on Singh's repeated assertions that he was unsure of how much his parents paid the agent, that he did not know the agent's name, that he could not explain how the agent arranged his travels, and that he could not explain why it was necessary for him to travel through several countries before arriving in Mexico.

Moreover, Singh's corroborating evidence does not explain why he has so little information or understanding about his travel. His mother's affidavit does not shed further light on his travels from India to the United States. Singh claims that he did not ask his parents to explain how the travel plans were arranged because of "cultural" norms. Pet'r Br. at 14. But even if Singh had made such a claim before the agency, which he did not, the IJ said that the explanation was still implausible considering that Singh personally interacted with the agent, and yet still could not explain basic details about the person or why he arranged a circuitous route from India to the United States.[1]

---

[1] The IJ recognized that "[a] negative credibility finding is not fatal to a claim for protection under the CAT" but instead limits the IJ's "consideration to the objective information contained within the record." A.R. 65. After reviewing the objective evidence in the record, the IJ concluded that it was insufficient to establish that Singh is more likely than not to be tortured upon his return to India. Because Singh did not challenge that conclusion before the Board and does not challenge it on appeal, we do not consider it. *See Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021).

## II.  Due Process Claim

Finally, Singh's immigration proceedings did not deprive him due process of law. We review allegations of due process violations in removal proceedings de novo. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). Although IJs retain "broad discretion in conducting [a removal] hearing," the Fifth Amendment's due process clause entitles immigrants facing deportation "to a full and fair hearing." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (citation modified). A procedural defect in such a hearing constitutes the type of "fundamental unfairness" that rises to a Fifth Amendment violation if it "might have led to a denial of justice." *Rranxburgaj v. Mukasey*, 286 F. App'x 268, 271–72 (6th Cir. 2008) (quoting *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008)). Reviewing an alleged due process violation involves a two-step inquiry: (1) whether the removal proceeding was defective; and, if so, (2) whether the defect caused prejudice. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016).

Singh fails to satisfy the first step of this inquiry. Specifically, Singh claims that he was deprived of due process because the IJ was biased, and that bias led the IJ to discount the value of the corroborating evidence that Singh proffered. Singh is entitled to "an unbiased arbiter who has not prejudged [his] claims". *Id.* (citation omitted). It follows that the absence of a neutral arbiter constitutes the type of defect that could give rise to a Fifth Amendment violation. However, to amount to a due process violation, Singh must demonstrate that the IJ has "abandoned [his] role as an impartial arbiter and became a zealous advocate." *Id.* Singh has failed to present sufficient evidence showing that the IJ presiding over his case was not neutral. As a result, his due process claim fails.

Additionally, Singh argues that that the Board engaged in impermissible fact finding. He points, for example, to the Board's reliance on the "fact[]" that he told the asylum officer that he

stopped his motorcycle on his own during the second assault—a point Singh says mischaracterizes his credible fear interview because he never expressly stated that he stopped the motorcycle. Pet'r Br. at 13. Although the officer's notes do not indicate how Singh's motorcycle stopped when the vehicle pulled in front of him, the Board's inference was reasonable. His assailants could not have beaten him with sticks on the ground unless he stopped driving at some point. That is a plausible inference, not a due process violation. Singh's due process claim therefore fails.

## CONCLUSION

For the foregoing reasons, we deny Singh's petition for review.